UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BOZZUTO CONTRACTORS, INC.**,

    Plaintiff,

    v.

**KEDRICK EVANS**,

    Defendant.

Case No. 1:19-cv-03292 (TNM)

## MEMORANDUM ORDER

Plaintiff Bozzuto Contractors, Inc. ("Bozzuto") moved for default judgment against Defendant Kedrick Evans, who has never responded to this breach of contract suit against him. Although Bozzuto did not initially establish subject matter jurisdiction, it has since filed a supplemental motion with evidence to confirm jurisdiction, liability, and damages. The Court will grant the motion and award Bozzuto the $831,592.47 in compensatory damages.

**I.**

The Court will only briefly recount the facts, which appear in its prior order. *See Bozzuto Contractors, Inc. v. Evans*, No. 1:19-CV-03292 (TNM), 2020 WL 7042766 (D.D.C. Dec. 1, 2020) ("*Bozzuto I*"). Bozzuto served as the general contractor of a construction project in Washington, D.C. *See* First Am. Compl. ("Am. Compl.") ¶¶ 1, 7, ECF No. 7.[1] Bozzuto hired Evans and his company, Washington Sprinkler Corporation ("WSC"), to install a fire suppression system for the project. But according to Bozzuto, the work was subpar, noncompliant with applicable regulations, and incomplete. *Id.* ¶¶ 8–13; Pl.'s Mot. for Entry of

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system and all exhibit numbers refer to the numbered attachments to the CM/ECF filings.

Judgment by Default ("Mot.") ¶ 6, ECF No. 16.  WSC also failed to pay its employees in compliance with federal regulations, which led to an enforcement action against Bozzuto and an obligation to pay the missing wages and payroll taxes.  Mot. ¶¶ 9–11.  Under the subcontract agreements, WSC had agreed to indemnify Bozzuto against all claims arising from its failure to comply with regulations.  *Id.* ¶ 9.

Bozzuto filed an Amended Complaint against Kedrick Evans raising two claims:  Breach of Contract for Failure to Perform Work (Count I) and Breach of Contract for Failure to Pay Prevailing Wages in violation of government regulations (Count II).  Am. Compl. ¶¶ 2–3, 17–40.  Bozzuto asserted in its Amended Complaint that Evans was domiciled in Virginia, *Id.* ¶ 3, though the process server soon learned that he had moved.  Pl.'s Resp. to Court's Show Cause Order ("Pl.'s Resp.") ¶ 8, ECF No. 12.  Two months after filing the Amended Complaint, Bozzuto finally served it on Evans's wife at the home she shares with Evans in Potomac, Maryland.  *See* Return of Service, ECF No. 13.

Bozzuto then moved for entry of default against Evans, which the Clerk granted.  Pl.'s Request for Entry of Default, ECF No. 14; Clerk's Entry of Default, ECF No. 15.  Because the Court denied Bozzuto's first motion for default judgment, Bozzuto now moves for default judgment a second time—this time supplemented by affidavits, spreadsheets, invoices, and letters.  Pl.'s Supplemental Mot. for Default J. ("Supplemental Mot."), ECF No. 19.  Evans still has not responded.

## II.

"Default judgments are not favored by modern courts, perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing."  *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).  That is why they "must

normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *819D LLC v. Potomac Constr. Grp., LLC*, No. 1:19-CV-00080 (TNM), 2020 WL 5518215, at *2 (D.D.C. Sept. 14, 2020) (cleaned up).

After the Clerk of Court has entered a default on the docket, a plaintiff may move for default judgment. Fed. R. Civ. P. 55(b); *Bozzuto I*, 2020 WL 7042766, at *2. Entry of default judgment, however, "is not automatic." *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). The Court must be sure that it has subject matter jurisdiction over the matter before proceeding to the merits. *Herbin v. Seau*, 317 F. Supp. 3d 568, 572 (D.D.C. 2018).

Once jurisdiction is established, "courts must conduct an inquiry into both liability and damages." *Bricklayers & Trowel Trades Int'l Pension Fund v. NY Big Apple Constr. Corp.*, No. 1:19-CV-03552 (TNM), 2020 WL 6683061, at *2 (D.D.C. Nov. 12, 2020). On liability, the defaulting defendant is considered to admit every well-pleaded allegation in the complaint. *Id.* Then the court "must make an independent evaluation of the damages to be awarded and has considerable latitude in determining the amount of damages." *819D*, 2020 WL 5518215, at *2 (cleaned up).

### III.

### A.

The Court must first ensure that it has Article III jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Ruseva v. Rosenberg*, 490 F. Supp. 3d 320 (D.D.C. 2020). Though Bozzuto failed to do so in its prior motion, it has now established that this Court has diversity jurisdiction under 28 U.S.C. § 1332.

3

"Diversity jurisdiction requires complete diversity—that is, it exists only when no plaintiff is a citizen of the same state as any defendant." *Bozzuto I*, 2020 WL 7042766, at *2; *see Saadeh v. Farouki*, 107 F.3d 52, 54–55 (D.C. Cir. 1997).  When considering diversity jurisdiction, courts look to each party's domicile, which turns on "physical presence in a state as well as the intent to remain there for an unspecified or indefinite period of time." *Herbin*, 317 F. Supp. 3d at 572 (cleaned up).  A corporation is a citizen of any state in which it is incorporated or in which it has its principal place of business.  28 U.S.C. § 1332(c).  "[F]or purposes of diversity jurisdiction, courts apply a presumption of continuing domicile, so that domicile in one place remains until domicile in a new place is established." *Core VCT Plc v. Hensley*, 59 F. Supp. 3d 123, 126 (D.D.C. 2014).

Here Bozzuto is a citizen of Maryland—the state where it is incorporated and has its principal place of business.  Am. Compl. ¶ 1.  That much was always clear.  At issue was whether Evans moved to Maryland by the time Bozzuto filed the Amended Complaint on February 25, 2020.  *Bozzuto I*, 2020 WL 7042766, at *2–3.  Bozzuto has now confirmed Evans's domicile in Virginia through documentary evidence.  Evans resided at a home in Springfield, Virginia, and registered to vote in that state.  *See* Supplemental Mot. Ex. 1 at 4, ECF No. 19-1; Ex. 2 at 3, ECF No. 19-2; Ex. 4 at 2, ECF No. 19-4.  He paid for utilities at his Virginia residence until March 11, 2020, and he did not begin paying utilities in Maryland until March 12, 2020. *See id.* Ex. 1 at 4; Ex. 2 at 3.  Based on the presumption of continuing domicile and change in utilities, the Court is satisfied that Evans's move to Maryland came after February 25.  With diversity jurisdiction established, the Court may proceed to the merits.

**B.**

On liability, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Herbin*, 317 F. Supp. 3d at 573–74 (cleaned up); *see also* 10A Charles Alan Wright et al., Fed. Prac. & Proc. § 2688.1 (4th ed.) (noting courts in their discretion "may require some proof of the facts that must be established in order to determine liability"). Because Evans has not responded to the Amended Complaint or the Motion for Default Judgment, he has failed to contest liability in this suit. So the Court "need only determine whether the allegations in the Complaint are well-pleaded." *Bricklayers*, 2020 WL 6683061, at *2.

To prove breach of contract (Counts I and II), a party must show (1) a valid contract; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages. *819D*, 2020 WL 5518215, at *2; *see Wetzel v. Cap. City Real Estate, LLC*, 73 A.3d 1000, 1005 (D.C. 2013).

Bozzuto provides agreements signed by Evans as a representative of WSC. Addressing Count I, Articles 13 and 17 of the subcontract agreement show that Evans agreed to perform certain work and pay for any work that had to be corrected or finished. *See* Supplemental Mot. Ex. 6 ("Schorr Aff.") at 3–4, ECF No. 19-6; Ex. 7 at 9–11, ECF No. 19-7. Evans failed to perform work in compliance with fire regulations and neglected to complete the project. As a result, Bozzuto hired other workers to fix subpar work and finish the job, sustaining damages. Evans is liable for these costs.

Turning to Count II, Article 8(a) of the subcontract shows that Evans agreed to indemnify Bozzuto for any government enforcement action that arose out of Evans's violations of law or noncompliance. *See* Schorr Aff. at 6; Ex. 7 at 7, ECF No. 19-7. The Department of Labor ("DOL") later launched an enforcement action against Bozzuto and the building project's owner

because Evans violated federal prevailing wage standards.  *See* Supplemental Mot. Ex. 15, ECF No. 19-15.  Because of that action, Bozzuto incurred costs related to wage restitution and unpaid payroll taxes, both of which are covered by Article 8(a), as well as associated attorneys' fees.  Article 17(b) shows Evans also agreed to cover "all costs"—including attorneys' fees—incurred from Evans's nonperformance of the subcontract's terms.  Schorr Aff. at 4.  So Evans is also liable for these costs.

### C.

Having established liability on both counts, the Court moves to the final step:  Damages.  Plaintiffs must prove the amount sought "to a reasonable certainty."  *Bricklayers*, 2020 WL 6683061, at *2; *Carpenters Lab.-Mgmt. Pension Fund v. Buffalo Veneer & Plywood Co., Inc.*, No. 1:20-CV-00670 (TNM), 2020 WL 5995124, at *2 (D.D.C. Oct. 8, 2020).  Courts may rely on "detailed affidavits or documentary evidence" in their assessment.  *Boland v. Providence Const. Corp.*, 304 F.R.D. 31, 36 (D.D.C. 2014) (cleaned up).

Bozzuto seeks $874,315.[2]  Supplemental Mot. at 5–6.  This includes $312,425 for Bozzuto's "completion of Mr. Evans's abandoned work and remediation of his deficient work," $522,283 for liability to the DOL and IRS, and $42,723 for attorneys' fees related to DOL's enforcement action.  *Id.*  The total damages sought decrease by $3,116 for a balance owed to Evans under the subcontracts but never paid.  *Id.*  Bozzuto submitted spreadsheets, invoices, letters, and payment requests that prove the remediation and DOL enforcement-related sums "to a reasonable certainty," *see, e.g.*, ECF Nos. 19-10, 19-11, 19-12, 19-23, so the Court will award

---

[2] In its original motion for default judgment, Bozzuto sought $838,988.36 in damages.  *See* Mot. For Default J., ECF No. 16, at 5.  After collecting more evidence, Bozzuto requests $874,315.

these damages. But Bozzuto has not submitted sufficient documentation to justify the attorneys' fees it requests, so the Court will not award those damages.

*First*, Bozzuto claims $312,425 in damages to complete and remediate Evans's work. Bozzuto catalogued its incurred costs, which include each payment's check number, date, invoice number, and amount, showing $312,425.41 spent to fix and complete the job. Supplemental Mot. Ex. 10 at 9–10, ECF No. 19-10. Bozzuto also provides some invoices and checks to confirm this schedule of costs. *Id.* Ex. 14, ECF No. 19-14. The total cost to Bozzuto was **$312,425.41**.

*Second*, Bozzuto asks for $522,283 to cover the costs resulting from the DOL enforcement action against WSC and payroll taxes associated with wage restitution. To support this claim, Bozzuto provides a schedule of costs, *id.* Ex. 10 at 12, ECF No. 19-10; an authorization for transfer and disbursement of contract funds, *id.* Ex. 20 at 2, ECF No. 19-20; checks sent to the U.S. Treasury, *id.* Ex. 23 at 12, ECF No. 19-23, and tax documents, *id.* Ex. 24 at 3–4, ECF 19-24. These documents confirm Bozzuto transferred $485,167.36 to DOL and paid $37,115.15 in payroll taxes. In sum, Bozzuto is entitled to **$522,282.51**.

*Third*, Bozzuto requests $42,723 to cover the attorneys' fees associated with the DOL enforcement action. Even where contract language does not so state, fee awards must be "reasonable." *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 281 (D.C. Cir. 2014). The "reasonableness of the fees requested by the plaintiff is a 'judgment call'" that "only the court can make." *SNH Med. Off. Properties Tr. v. Healthy Eateries L.L.C.*, 325 F.R.D. 514, 520 (D.D.C. 2018) (cleaned up). Courts look to: "(1) the number of hours reasonably expended in litigation; and (2) the reasonable hourly rate for the services provided." *Reed v. District of Columbia*, 843 F.3d 517, 520 (D.C. Cir. 2016) (cleaned up). On the hours, a plaintiff "must

7

provide the Court with sufficiently detailed information about the hours logged and the work done [] based on contemporaneous time records." *SNH Med. Off. Properties Tr.*, 325 F.R.D. at 520 (cleaned up).  On the rate, a plaintiff must "produc[e] satisfactory evidence [] that the requested rates are in line with those prevailing in the community." *Id.* (cleaned up).

In its first order, the Court denied Bozzuto's motion in part because of a lack of documentary evidence of damages, explaining that "Bozzuto needs to submit documentary evidence justifying the damages it alleges and an explanation of its calculations." *Bozzuto I*, 2020 WL 7042766, at *3.  Now for attorneys' fees Bozzuto included a list of invoice numbers and amounts paid, *see* Supplemental Mot. Ex. 10 at 13, ECF No. 19-10, as well as copies of the invoices sent by Seyfarth Shaw Attorneys LLP, *id.* Ex. 19, ECF No. 19-19.

To be sure, these documents support an inference that Bozzuto paid out $42,722.50 in attorneys' fees.  But this evidence fails to explain how the charged fees are "reasonable."  Neither Bozzuto's motion nor the affidavit from its counsel mentions the "prevailing market rates" for the services rendered or any justification for the number of hours billed.  *See SNH Med. Off. Properties Tr.*, 325 F.R.D. at 520 (referencing "*Laffey* Matrix or the U.S. Attorney's Office Matrix").  Bozzuto "has not even taken the basic step of submitting an affidavit detailing [counsel's] experience and education." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004).  More, the invoices redact the descriptions of the work allegedly performed.  In short, the Court is left with only the number of hours spent by attorneys billing at unjustified rates for unspecified services.  On this record, the Court cannot fulfill its obligation to make an "independent evaluation" of the damages, *819D*, 2020 WL 5518215, at *2, to "a reasonable certainty." *Bricklayers*, 2020 WL 6683061, at *2.  Given that Bozzuto failed at even this second

8

bite at the apple, the Court will not dip into Evans's pockets yet again to award attorneys' fees for the DOL enforcement action.

*   *   *

The proven damages amount to $834,707.92. The Court will subtract $3,115.45—the amount still owed to Evans—as Bozzuto acknowledges is proper. *See* Supplemental Mot. at 6. The Court will therefore award Bozzuto **$831,592.47**.

### IV.

For these reasons, it is hereby

**ORDERED** that Plaintiff's [19] Supplemental Motion for Entry of Judgment by Default is GRANTED; and it is further

**ORDERED** that JUDGMENT IS ENTERED against Defendant in the amount of $831,592.47.

**SO ORDERED.**

This is a final and appealable order. The Clerk of Court shall close this case.

Dated: April 21, 2021                              TREVOR N. McFADDEN, U.S.D.J.